## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VALERIE EAKINS, individual and on behalf of all other similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU,<br><br>      Defendant. | Case No:  CIV-23-560-J<br><br>Class Action |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO COMPEL <u>ARBITRATION AND TO STAY THIS ACTION</u>

John A. Burkhardt, OBA #1336
Email: john.burkhardt@schafferherring.com
SCHAFFER HERRING PLLC
7134 S. Yale, Ste. 300
Tulsa, OK 74136
Direct Line: (918) 856-5378
Facsimile: (918) 550-8106

Robert A. Stines (*pro hac vice*)
Florida Bar No. 78447
SMITH GAMBRELL & RUSSELL LLP
201 N. Franklin Street
Suite 3550
Tampa, Florida 33602
rstines@sgrlaw.com

*Attorneys for Defendant WHALECO INC. d/b/a TEMU*

Dated: July 25, 2023

**Table of Contents**

I.   WHALECO'S BUSINESS ...............................................................................1

II.  EAKINS CREATED A TEMU USER ACCOUNT............................................1

III. APPLICABLE STANDARD AND PROCEDURE .........................................2

IV.  ANALYSIS ....................................................................................................3

   A.   The Parties Entered into a Valid Arbitration Agreement.............................3

      1.   Sign-In-Wrap Agreements Are Binding and Enforceable ........................7

   B.   An Arbitrable Issue Exists...........................................................................11

V.  CONCLUSION ..............................................................................................13

## Cases

Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228 (2013) .................................. 11

Brown v. Bob Moore Auto Grp., L.L.C., 2019 WL 3976848 (W.D. Okla.
 Aug. 22, 2019) ................................................................................. 4, 12

Edwards v. Blockbuster Inc., 400 F. Supp. 2d 1305 (E.D. Okla. 2005).............. 1, 3

Fteja v. Facebook, Inc., 841 F. Supp. 2d, 829 (S.D.N.Y. 2012)........................... 10

Guadagno v. E*Trade Bank, 592 F.Supp.2d 1263 (C.D. Cal. 2008) ...................... 9

Hancock v. Am. Tel. & Tel. Co., Inc., 701 F.3d 1248 (10th Cir. 2012) ................. 7

In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.,
 835 F.3d 1195 (10th Cir. 2016) ........................................................................ 3

KPMG LLP v. Cocchi, 565 U.S. 18 (2011)..................................................... 2, 11

Major v. McCallister, 302 S.W.3d 227 (Mo. Ct. App. 2009).............................. 8, 9

Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460
 U.S. 1 (1983) ................................................................................................. 2

Route App, Inc. v. Heuberger, 2022 WL 2316377 (D. Utah June 28,
 2022) .............................................................................................. 4, 7, 9, 10

Sanchez v. Nitro-Lift Techs., L.L.C., 762 F.3d 1139 (10th Cir. 2014)................... 3

Shearson/American Express, Inc. v. McMahon, 107 S.Ct. 2332 (1987) ................ 2

Walker v. BuildDirect.com Techs., Inc., 733 F.3d 1001 (10th Cir. 2013).............. 4

## Statutes

9 U.S.C. § 1 et seq............................................................................................ 2, 11

9 U.S.C. § 2 ....................................................................................................... 11

9 U.S.C. § 4 ......................................................................................................... 3

Plaintiff, Valerie Eakins ("Eakins") expressly agreed to arbitrate the claims asserted in her Petition against Whaleco Inc. d/b/a TEMU ("Whaleco") and waived her right to a jury trial as well as the opportunity to bring a class action suit or class arbitration against Whaleco[1]; therefore, this Court must compel her to arbitration and stay this action.

## I.   WHALECO'S BUSINESS

Whaleco does business as TEMU and operates https://temu.com and its mobile apps on Android and Apple iOS devices. TEMU is an online retail marketplace that connects consumers with sellers, manufacturers and brands around the world.

## II.   EAKINS CREATED A TEMU USER ACCOUNT

On January 19, 2023, Eakins accessed TEMU's website, registered for an account, saw the statement: "By Continuing, you agree to our Terms of Use and Privacy & Cookie Policy", saw the conspicuous hyperlink to Whaleco's Terms of Use, and clicked the "Continue" button to assent to the Terms of Use.  *See* Declaration of Michael Trinh, attached as **Exhibit "1"** (hereinafter, "Trinh Declaration").

---

[1] Arbitration agreements precluding class-action relief are valid and enforceable. *Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005).

A dispositive fact in this case is that Eakins voluntarily provided her mobile phone number and registered to receive transactional and marketing text messages for exclusive coupons, order status, and text-only events. As part of the process, she "agreed to receive autodialed marketing messages on [her] number." *See* **Exhibit "2."** Hence, contrary to the allegations in the Petition, Eakins provided expressed written consent authorizing Whaleco to send her text messages. Every text message that Whaleco sent to Eakins gave her an option to opt out of receiving future text messages by simply responding with "STOP," but she never opted out. After receiving the text messages—that she requested—she filed this putative class action lawsuit.

As explained below, Whaleco's online Terms of Use has an enforceable and valid arbitration clause; therefore, the Court must compel Eakins to arbitration.

## III.    APPLICABLE STANDARD AND PROCEDURE

The Federal Arbitration Act establishes "a federal policy favoring arbitration." *Shearson/American Express, Inc. v. McMahon*, 107 S.Ct. 2332, 2337, *reh'g denied*, 108 S.Ct. 31 (1987) quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Agreements to arbitrate that fall within the scope and coverage of the Federal Arbitration Act (Act), 9 U.S.C. § 1 *et seq.,* must be enforced. *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). In particular, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201 (10th Cir. 2016); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014).

## IV.   ANALYSIS

### A. The Parties Entered into a Valid Arbitration Agreement

Under the FAA, a court must compel arbitration pursuant to the terms of the parties' agreement if (1) a valid, enforceable arbitration agreement exists, and (2) the asserted claims are within the scope of that agreement. 9 U.S.C. § 4; *Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005). Although the FAA "requires arbitration agreements to be in writing, it does not require the writing to be signed". *Edwards*, 400 F. Supp. 2d at 1308. Additionally, courts have recognized that the FAA applies to all arbitration agreements involving interstate commerce, such as the Agreement at issue in this case. *Id.*

The first task for this Court is to determine whether the parties agreed to arbitrate the dispute. *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d at 1201. "Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d

1001, 1004 (10th Cir. 2013), *certified question answered,* 2015 OK 30, 349 P.3d

549. Under Oklahoma law, a contract is simply "an agreement to do or not to do"

something, requiring (1) parties capable of contracting; (2) those parties' consent;

(3) a "lawful object"; and (4) sufficient consideration. *Brown v. Bob Moore Auto

Grp., L.L.C.*, No. CIV-19-409-R, 2019 WL 3976848, at *5 (W.D. Okla. Aug. 22,

2019). Basic contract law principles indicate that consumers are bound by an online

agreement if they have reasonable notice of the terms and affirmatively manifest

assent to those terms. *Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB,

2022 WL 2316377, at *2 (D. Utah June 28, 2022).

On January 19, 2023, Eakins accessed the TEMU website and registered for

an account. *See* Trinh Declaration. In the process of registering for an account, she

was presented with a pop-up window that had the following stand alone, full-screen

user interface:



In plain view was the statement: "By continuing, you agree to our **Terms of Use** and

Privacy and Cookie Policy." The words "**Terms of Use**" was in bold letters and there

was a hyperlink to Whaleco's Terms of Use. Eakins did not have to scroll to see the

hyperlink for the Terms of Use and it was in a conspicuous position. Clicking on the

5

hyperlink directed users to a separate webpage with the entire Terms of Use; hence,

Eakins was able to review the Terms of Use before clicking continue.

To register her account, Eakins entered her phone number and clicked

continue. *See* Exhibit A to Trinh Declaration. By clicking "Continue" she assented

to the Terms of Use. *See* Exhibit B to Trinh Declaration. Near the top of the Terms

of Use, it states in upper case bold letters:

> PLEASE BE AWARE THAT SECTION 20 OF THE TERMS BELOW
> CONTAINS PROVISIONS GOVERNING HOW DISPUTES THAT
> YOU AND WHALECO HAVE AGAINST EACH OTHER WILL BE
> RESOLVED, INCLUDING WITHOUT LIMITATION, ANY
> DISPUTES THAT AROSE OR WERE ASSERTED PRIOR TO THE
> EFFECTIVE DATE OF THE AGREEMENT. SECTION 20
> CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO
> ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS,
> THAT ALL DISPUTES BETWEEN YOU AND WHALECO BE
> RESOLVED BY BINDING AND FINAL ARBITRATION. UNLESS
> YOU OPT OUT OF THE AGREEMENT TO ARBITRATE WITHIN
> 30 DAYS OF THE EFFECTIVE DATE OF THE AGREEMENT: (1)
> YOU AND WHALECO WILL ONLY BE PERMITTED TO PURSUE
> DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST THE
> OTHER PARTY ON AN INDIVIDUAL BASIS, NOT AS A
> PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR
> REPRESENTATIVE ACTION OR PROCEEDING AND EACH OF
> US WAIVES OUR RIGHT TO PARTICIPATE IN A CLASS ACTION
> LAWSUIT OR CLASS-WIDE ARBITRATION; AND (2) EACH OF
> US IS WAIVING OUR RIGHT TO PURSUE DISPUTES OR CLAIMS
> AND SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY
> TRIAL.

Section 20 begins with the following:

20. DISPUTE RESOLUTION

6

PLEASE READ THE FOLLOWING ARBITRATION AGREEMENT IN THIS SECTION ("ARBITRATION AGREEMENT") CAREFULLY. IT REQUIRES YOU AND WHALECO TO ARBITRATE AGAINST ONE ANOTHER. PLEASE BE AWARE THAT THIS SECTION 20 CONTAINS PROVISIONS GOVERNING HOW DISPUTES THAT YOU AND WHALECO HAVE AGAINST EACH OTHER WILL BE RESOLVED. AMONG OTHER THINGS, THIS SECTION 20 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND WHALECO BE RESOLVED BY BINDING AND FINAL ARBITRATION.  THIS SECTION 20 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ THIS SECTION 20 CAREFULLY.

Despite entering into the arbitration agreement, Eakins filed this lawsuit against Whaleco on May 25, 2023.

## 1.    Sign-In-Wrap Agreements Are Binding and Enforceable

In the internet-age, courts have generally recognized four types of online consumer agreements: clickwrap, scrollwrap, sign-in wrap, and browsewrap. *Route App, Inc.*, 2022 WL 2316377, at *2.  Whaleco uses a sign-in-wrap agreement on the TEMU platform.  With sign-in-wrap agreements, users generally consent to the terms when they sign into an account or sign up for use of the site's services. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248 (10th Cir. 2012). To determine whether sign-in-wrap agreements are enforceable, courts engage in fact-intensive inquiries of the layout and language of a website or application. *Route App, Inc. v. Heuberger*, 2022 WL 2316377, at *3.

Whaleco's sign-in-wrap agreement is enforceable because Eakins had reasonable notice of the terms and she affirmatively manifested assent to those terms. To create a TEMU account, users see a pop-up window interface with the statement: "By continuing, you agree to our Terms of Use and Privacy and Cookie Policy." The pop-up window user interface is designed to be distinct and obvious. The pop-up window is distraction free and allows the user to view the entire screen without scrolling.  The words "Terms of Use" is in bold letters and a hyperlink to Whaleco's Terms of Use. Eakins did not have to scroll to see the hyperlink for the Terms of Use and it was in a conspicuous position. She was able to click on the hyperlink to review the Terms of Use before clicking continue to agree. To register her account, Eakins entered her mobile number and clicked the "Continue" button. See Trinh Declaration.  Eakins assented to the Terms of Use by clicking "Continue." Within the Terms of Use is the arbitration clause.

The court in *Major v. McCallister,* 302 S.W.3d 227, 230 (Mo. Ct. App. 2009) reached a similar conclusion. In that case, the user of a construction contractor referral website purportedly assented to terms and conditions regarding any disputes that included a forum selection clause. As part of the website's registration process, the user provided identification information and then clicked a button to submit the registration. "Next to the button was a blue hyperlink to the website terms and this notice: 'By submitting you agree to the Terms of Use.'" *Id.* at 229. On those facts,

the court opined that the website's terms were conspicuous such that a reasonably prudent internet user could know or learn of their existence. *Id.* at 231.

The court in *Guadagno v. E\*Trade Bank,* 592 F.Supp.2d 1263 (C.D. Cal. 2008) upheld an arbitration clause contained in terms and conditions accessible via a hyperlink next to a button on a registration page. Before opening her account with E\*Trade, Guadagno completed an online application. *Id.* at 1267. On the page containing the application was the following notice: "The following contain important information about your account." *Id.* The notice "provide[d] a highlighted, bullet-pointed, underlined link to the Agreement." *Id.* Below the link was a box that applicants must check to proceed with opening an E\*Trade account and the text next to the box stated: 'By checking this box, you acknowledge that you have reviewed the ... **Agreement** ...." *Id.* (emphasis and ellipses in original). In those circumstances, the court held that "[a] reasonably prudent offeree would have noticed the link and reviewed the terms before clicking on the acknowledgment icon." *Id.* at 1271.

More recently in *Route App, Inc. v. Heuberger* the United States District Court for the District of Utah was faced with the question of whether the plaintiff had consented to jurisdiction by agreeing to online Terms and Conditions, which contained a forum selection clause. The defendant's website used a sign-in-wrap agreement in which online users must create an account.  On the webpage there was text stating, "By continuing, you are agreeing to our Terms of Service and Privacy

9

Policy." The words "Terms of Service" were underlined in blue font and hyperlinked

to a separate webpage with Route's Terms and Conditions. *Route App, Inc.*, 2022

WL 2316377 at *3. The plaintiff did not deny clicking "Continue" to create an

account, but he argued that he was not sufficiently noticed that by doing so he was

purportedly agreeing to the Terms and Conditions.  The district court noted that

entire page appears on a single screen and does not require the user to scroll beyond

what is already visible to see the Terms of Service. The court found that the design

of the webpage provided sufficient notice to a user that by choosing "Continue," the

user is "agreeing" to the hyperlinked terms.

Like the cases above, Whaleco's Terms of Use hyperlink is located on a

single, colorful, pop-up, full-screen user interface on the TEMU website. The pop-

up, full-screen design creates a distraction free environment. The Terms of Use

hyperlink is in bold letters to make it distinct and stand out from the surrounding

text. Like the cases described above, the design of Whaleco's webpage provided

sufficient notice to the users that by choosing "Continue," the user was "agreeing"

to the hyperlinked terms that contained the arbitration clause. It would be

unconvincing for Eakins to argue that she did not "notice" the hyperlink or read the

Terms of Use on the full-screen display. "Failure to read a contract before agreeing

to its terms does not relieve a party of its obligations under the contract." *Fteja v.

Facebook, Inc.*, 841 F. Supp. 2d, 829, 839 (S.D.N.Y. 2012) (finding sign-in-wrap

agreement to be enforceable). This Court, like the cases above should find that Whaleco's pop-up, full-screen user interface design with the bolded hyperlink to the Terms of Use is conspicuous enough to put a reasonably prudent person on inquiry notice. Hence, by clicking "Continue," Eakins assented to the Terms of Use that contained an arbitration clause.

Section 20.5 of the Terms of Use incorporates the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"). Under the FAA, the agreement to arbitrate on an individual basis between the parties is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP*, 565 U.S. at 21. It requires that federal and state courts "rigorously enforce arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013). This Court should rigorously enforce the arbitration provision in the Terms of Use and compel Eakins to arbitrate her dispute against Whaleco.

**B. An Arbitrable Issue Exists**

Whaleco's Terms of Use, clearly states that, *inter alia*, "[a]ny disputes, claim, or disagreement arising out of or relating in any way to . . . any communications you receive, . . . will be resolved by binding arbitration, rather than in court . . .." *See* Whaleco's Terms of Use, Section 20.1. As alleged in the Petition, this lawsuit is

11

about communications that Eakins received from Whaleco, which is an agreed upon arbitrable issue. Petition, ¶ 1. By the unambiguous terms of the binding arbitration agreement, Eakins' Petition is subject to arbitration.

Even if there was some doubt about whether an arbitrable issue exists (there shouldn't be), the Court must still compel arbitration because the Terms of Use incorporates the FAA rules and Section 20.7 provides that the arbitrator has exclusive jurisdiction to resolve any dispute "related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement." This is a classic delegation clause that reflects the parties' agreement to "arbitrate threshold issues concerning the arbitration agreement" and "gateway questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Brown v. Bob Moore Auto Grp., L.L.C.*, 2019 WL 3976848, at \*3 (W.D. Okla. Aug. 22, 2019).  To be clear, a delegation clause in an arbitration agreement is enforceable and requires the court to send the question of arbitrability to the arbitrator. *Id.*

Accordingly, under well-settled and controlling case law, the question of whether this dispute falls within the scope of the Parties' arbitration agreement is a question for the arbitrator to decide. In other words, so long as the Court finds that the Parties have entered into a valid arbitration agreement—which they have—this

case should be stayed,[2] and all subsequent questions may be appropriately raised in arbitration.

## V.   CONCLUSION

The Parties to this dispute have a valid and binding arbitration agreement, and the issue raised in the Class Action Petition is arbitrable. As such, this Court should enter an order compelling this dispute to arbitration, staying this proceeding pending the conclusion of the arbitration and for any other relief that this Court deems just and proper.

Respectfully submitted,

s/John A. Burkhardt
John A. Burkhardt, OBA #1336
Email: john.burkhardt@schafferherring.com
Attorney for Defendant
SCHAFFER HERRING PLLC
7134 S. Yale, Ste. 300
Tulsa, OK 74136
Direct Line: (918) 856-5378
Facsimile: (918) 550-8106

---

[2] Pursuant to 9 U.S.C.A. § 3, when the Court is satisfied that the proceeding is referable to arbitration, the Court shall *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement. *See Griggs v. Check 'N Go of Oklahoma, Inc.*, 2006 WL 3544338, at *1 (W.D. Okla. Nov. 29, 2006) (compelling arbitration and finding that a stay is appropriate).

Robert A. Stines (*pro hac vice*)
Florida Bar No. 78447
SMITH GAMBRELL & RUSSELL LLP
201 N. Franklin Street
Suite 3550
Tampa, Florida 33602
rstines@sgrlaw.com

**CERTIFICATE OF ELECTRONIC SERVICE AND FILING**

This is to certify that on this 25th day of July 2023, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to all counsel of record. To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

s/John A. Burkhardt
John A. Burkhardt

14